UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JOBAL JAY LIVINGSTON,<br><br>    Appellant<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>    Appellee | Case No.: 2:23-cv-01277-APG-NJK<br><br>**Order Affirming Conviction**<br><br>[ECF No. 1] |

Jobal Jay Livingston appeals his conviction for disorderly conduct arising out of an incident at the Veterans Affairs (VA) hospital in North Las Vegas. Magistrate Judge Nancy Koppe conducted a bench trial and found Livingston guilty under 38 C.F.R. § 1.218, a Department of Veterans Affairs regulation. ECF No. 10-1 at 162. Having reviewed the law and sufficiency of the evidence de novo, I affirm the conviction because there is sufficient evidence to show that Livingston's conduct would tend to disrupt the normal operations of the VA facility.

**I. BACKGROUND**

On December 4, 2021, Livingston was a patient in the mental health unit at the VA hospital. *Id.* at 19-21. At meal time, Registered Nurse Williams attempted to provide Livingston with medication. *Id.* at 22-23. In front of other patients, Livingston "slapped the pills on the floor," started to curse, yell, scream, and pace, and demanded to leave the hospital. *Id.* at 23-25. Williams went to find Nurse Practitioner Pallasigui, who had the authority to discharge Livingston. *Id.* at 25-26. Williams escorted Pallasigui, a social worker, and a mental health technician (Talag) to the patient room where Livingston was lying in bed. *Id.* at 26, 30. Talag was asked to stand by and help. *Id.* at 33, 69.

Pallasigui testified that while they discussed his discharge, Livingston was "verbally aggressive, hostile, agitated," and making derogatory and discriminatory comments. *Id.* at 119. Livingston was speaking at a volume loud enough to be heard outside the room and by other patients. *Id.* at 69, 119-20. This concerned Pallasigui because other patients in the unit may have post-traumatic stress disorder (PTSD) and can be triggered by loud noises. *Id.* at 120. She also testified that receiving verbal abuse affects her ability to care for other patients. *Id.* at 136.

Suddenly, Livingston charged at the social worker. *Id.* at 33. Williams put his arm out and said, "Stop." *Id.* at 34. Livingston punched Williams in the arm and kicked Williams in the chest. *Id.* In response, Williams and Talag restrained Livingston by grabbing his arms and holding him down. *Id.* at 35. Two other staff members came to help restrain Livingston. *Id.* at 35-36. Other staff called a Code Gray over the hospital announcement system.[1] *Id.* at 35, 85.

Williams testified that he restrained Livingston because communication and de-escalation were not working and because Livingston "became unpredictable." *Id.* at 36-37. Williams testified that a patient in Livingston's situation could run out of the room and harm other patients, himself, or VA property. *Id.*

Staff continued to restrain Livingston for a few minutes until VA police arrived and took over. *Id.* at 35-37. Talag testified that he "returned to [his] normal duties" after the VA police took over. *Id.* at 73. Per hospital policy, Williams went to the emergency room after the incident instead of returning to his normal duties. *Id.* at 38. He had contusions on his left arm and chest. *Id.* at 38-39. He went home early, missing the last hour or two of his shift. *Id.*

---

[1] A Code Gray calls for qualified medical staff to respond to a disruptive situation. ECF No. 10-1 at 85. VA police are also required to respond to a Code Gray and to take charge if the situation becomes violent. *Id.* at 85, 173. Code Grays are called frequently, a few times each week. *Id.* at 95, 130.

## II. ANALYSIS

I have the same scope of appeal from a judgment of a misdemeanor conviction by a magistrate judge as the court of appeals has over an appeal from a judgment made by the district court. Fed. R. Crim. P. 58(g)(2)(D); LR IB 3-3.  I review de novo claims of insufficient evidence and the magistrate judge's interpretation of the elements of the crime. *United States v. Virgen-Mendoza*, 91 F.4th 1033, 1041 (9th Cir. 2024); *United States v. McNeil*, 320 F.3d 1034, 1035 (9th Cir. 2003).  "To prevail on his sufficiency of the evidence challenge, [the appellant] must show that, viewing the evidence in the light most favorable to the prosecution, no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Agront*, 773 F.3d 192, 199 (9th Cir. 2014).

Title 38 C.F.R. § 1.218(a) outlines the "rules and regulations" that apply on VA property. In particular, § 1.218(a)(5) prohibits "[d]isturbances," which is defined in relevant part as "[c]onduct on property which creates loud or unusual noise, . . . which otherwise impedes or disrupts the performance of official duties by Government employees; [or] which prevents one from obtaining medical or other services provided on the property in a timely manner."

Section 1.218(b) outlines the "[s]chedule of offenses and penalties" for "[c]onduct in violation of the rules and regulations set forth in paragraph (a) of this section."  In particular, § 1.218(b)(11) provides that "[d]isorderly conduct which creates loud, boisterous, and unusual noise . . . or which tends to impede or prevent the normal operation of a service or operation of the facility" is subject to a prison term of up to six months and a $250 fine.  "Technically, subsection (b)(11) provides only a penalty; the substantive offense conduct is defined" in subsection (a)(5). *Agront*, 773 F.3d at 195 n.2.  Section 1.218(b)(11) "corresponds to § 1.218(a)(5)'s 'disturbances'" and is "solely a penalty provision [that] must be read to cover the

same conduct prohibited by the substantive provision." *Id.* at 198.  Any conduct that violates subsection (b)(11) must meet the "controlling standard of conduct," which is that it "would tend to disturb the normal operation of a VA facility." *Id.* at 197.  In other words, that conduct must "pose[] an 'actual or imminent interference' with that facility's operation." *Id.* at 197 n.5 (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 111-12 (1972)).

Livingston contends that there was insufficient evidence to show a disruption of the normal operations of the VA facility.  Specifically, he argues that his conduct only incidentally disrupted the duties of VA staff and that does not satisfy § 1.218(b)(11) because, he argues, (b)(11) requires a "facility-wide disruption." ECF No. 10 at 2.  Moreover, he argues that his conduct falls within the normal operation of the VA facility because the evidence shows that yelling and aggression (including violence) are common and anticipated behaviors for patients in the mental health unit, VA staff are trained to de-escalate and respond to such behavior, and Code Grays are a regular occurrence in the hospital.

The government responds that there is sufficient evidence of disorderly conduct because Livingston was verbally and physically aggressive, which caused staff to leave their normal duties to deal with the situation and caused Williams to report to the emergency room and be discharged early from his shift.  It contends that Magistrate Judge Koppe correctly found that Livingston violated subsection (b)(11) because his conduct was prohibited per subsection (a)(5).  Lastly, it argues that the VA must serve every veteran patient in the unit suffering from mental health unit, not just Livingston, and that the frequency of Code Grays does not transform a disruption into a normal event.

Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found beyond a reasonable doubt that Livingston's conduct tended to disturb the

normal operation of a VA facility. In particular, Livingston's conduct actually interfered with the VA facility's operation by causing Williams to report to the emergency room and leave his shift early. Livingston's conduct also caused Talag to leave his normal duties to monitor the situation. *See Agront*, 773 F.3d at 199 (holding that evidence that staff were drawn away from their ordinary tasks to monitor an altercation was sufficient to meet the § 1.218(b)(11) standard).

Moreover, Livingston's conduct also posed an imminent interference with the VA facility's operation. A rational trier of fact could find that Livingston's behavior was escalating, and that he could have exhibited increased aggression, violence, and loudness that would trigger other patients. *See id.* at 196-97 (noting that §§ 1.218(a)(5) and (b)(11) are designed "to maintain a calm environment at VA facilities" for the purpose of avoiding psychological reactions from veteran patients). A rational trier of fact could also find that Livingston's verbal abuse tended to disturb Pallasigui's ability to provide medical care to her patients. I therefore affirm the conviction.

### III. CONCLUSION

I THEREFORE ORDER that appellant Jobal Jay Livingston's appeal **[ECF No. 1] is DENIED** and his conviction of disorderly conduct is affirmed. The clerk of court is instructed to enter judgment and close this case.

DATED this 29th day of February, 2024.

_____
ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE